UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAUNDRA TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1166 (RC) |
| | ) | |
| LAW OFFICE OF GALIHER, CLARKE & GALIHER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' Motion to Dismiss the Complaint [ECF No. 5]. For the reasons discussed below, the motion will be granted.

I. BACKGROUND

Plaintiff is a former employee of Verizon Communications, Inc. ("Employer"), Compl. at 1, who suffered injuries on August 24, 2001 to "her head, neck, back and legs when she fell down steps while performing her job duties." Defs.' Mem. of P. & A. in Support of their Mot. to Dismiss the Compl. ("Defs.' Mem."), Ex. 1 (Compensation Order dated August 6, 2010) at 2. She underwent treatment for her "lower extremity, lumbar, and cervical symptoms." *Id.*, Ex. 1 at 2. After a formal hearing, an Administrative Law Judge ("ALJ") issued a Compensation Order on July 18, 2003, reflecting her determination that "there was a medical causal relationship between [plaintiff's] post-concussive disorder and her work injury." *Id.*, Ex. 1 at 2.

Subsequently, plaintiff "sought a schedule award for fifteen percent (15%) permanent impairment to the lower right extremity and fifteen percent (15%) permanent impairment to the

1

lower left extremity." *Id.*, Ex. 1 at 2.  After a formal hearing on March 8, 2005, an ALJ issued a Compensation Order on April 20, 2005, reflecting his determination that plaintiff "had not retained a permanent impairment to her lower extremities." *Id.*, Ex. 1 at 2.  The ALJ's determination was upheld on administrative appeal by the Department of Employment Services Compensation Review Board on June 16, 2005 and by the District of Columbia Court of Appeals on May 20, 2008.

In 2009, plaintiff sought a modification of the April 20, 2005 Compensation Order "to award permanent total disability benefits beginning June 1, 2004 to present and continuing, as well as causally related medical expenses." *Id.*, Ex. 1 at 2.  Richard W. Galiher, Jr., Esq. ("Galiher") and the Law Office of Galiher, Clarke & Galiher represented plaintiff in the matter.  Curtis B. Hane represented the Employer and its insurance carrier, Sedgwick Claims Management Services, Inc.  Compl. ¶¶ 2-4, 7.  Before the ALJ were two issues:

> 1. Whether the April 20, 2005 Compensation Order should be modified based upon a change in condition?
>
> 2. Is [plaintiff] entitled to an award for permanent total disability benefits?

Defs.' Mem., Ex. 1 at 2.  The matter "commenced on September 24, 2009 and . . . reconvened on October 1, 2009" for an evidentiary hearing.  Compl. ¶ 7.

Generally, since the April 20, 2005 Compensation Order, plaintiff had complained of memory loss, post-concussion headaches, *see* Defs.' Mem., Ex. 1 at 3, 5, and "problems with her head, neck, back and legs," *id.*, Ex. 1 at 5.  The ALJ found that medical tests found no evidence of memory loss, psychiatric or mental defects, or signs of brain injury, *see id.*, Ex. 1 at 2-3, 6-7, and there was evidence of only a "mild degenerative change of the lumbosacral spine," *id.*, Ex. 1 at 3.  An independent medical examination showed no objective findings to support plaintiff's complaints about her neck and upper and lower extremities, such that plaintiff was considered

"capable of working in a full duty capacity" without need for restrictions related to the August 24, 2001 work injury. *Id*., Ex. 1 at 6. Nor did neurological examinations show that plaintiff had or could have sustained memory loss as a result of the August 24, 2001 work injury. *Id*., Ex. 1 at 6-7.

The Employer introduced an exhibit at the hearing, identified by plaintiff as "internet impeachment document (EE 11)," Compl. at 1, for the purpose of impeaching plaintiff's testimony. *See id*. The exhibit was derived from the website of Bluff Magazine and purported to reflect plaintiff's poker tournament winnings, *see id*. at 2, and was presented for the purpose of challenging plaintiff's testimony regarding memory loss, cognitive impairment, ability to sit for long periods, and post-injury income. *See generally* Pl.'s Ans. To Defs.' Mot. to Dismiss the Compl. ("Pl.'s Opp'n"), Ex. 7 (Self-Insured Employer's Proposed Findings of Fact, Conclusions of Law, and Closing Brief served October 15, 2009). Specifically, according to plaintiff, the contents of EE 11 conflicted with the arguments set forth in the Employer's final submission to the ALJ, which included references to plaintiff's poker tournament winnings between November 5, 2001 and January 27, 2009. *See id.*, Ex. 7 at 2-7. The Employer argued that plaintiff's testimony at the hearing, specifically denial of receipt of any income from any source since her August 24, 2001 work injury, conflicted with her responses on cross-examination, notably her admission that she was a professional gambler who regularly participated in and won professional poker tournaments. Pl.'s Opp'n, Ex. 7 at 12. In addition, the Employer argued that plaintiff's success at poker undermined her complaints of memory loss and physical condition/disability/whatever. *Id*., Ex. 7 at 15-16. Based on these inconsistencies, the Employer argued that her hearing testimony was not credible. *Id*., Ex. 7 at 15.

Plaintiff believed the exhibit to be fraudulent.  Compl. ¶ 7.  "A couple days after [the] formal hearing on October 1, 2009 the Plaintiff had a dream where here deceased mother informed [her] that there was something wrong with the Bluff Magazine[] internet impeachment document."  *Id*. at 2.  The dream prompted plaintiff to "access[] the Bluff Magazine's website," at which time she "notice[d] that the . . . internet impeachment document did not list her past poker tournament winnings for the years of 2000 through 2002."  *Id*.  Plaintiff promptly contacted Galiher and advised him that the "internet impeachment document did not list[] her past poker tournament winnings for years of 2000 through 2002," *id*., contrary to Employer's representations.  Although Galiher allegedly was aware of the discrepancy between EE 11 and the argument set forth in the Employer's October 15, 2009 submission, Galiher submitted Claimant's Closing Trial Brief of Permanent and Total Disability which "failed to inform the ALJ that the [Employer] made improper arguments of [her] past poker tournament winnings."  *Id*. at 2.  "The record closed on October 20, 2009, upon receipt of the parties' closing arguments."  Defs.' Mem., Ex. 1 at 1-2.

The ALJ found plaintiff's "testimony . . . to be incredible," given "the inconsistent, self-serving nature of her responses and her presumptuous attempts on cross-examination to obfuscate factual findings.  *Id*., Ex. 1 at 3.  Furthermore, the ALJ did not credit evidence from plaintiff's treating physicians as they were "based upon [plaintiff's] incredible subjective complaints."  *Id*., Ex. 1 at 7; *see id*., Ex. 1 at 3-4 (summarizing results of neurological, psychological, orthopedic, radiology and psychiatric evaluations).  Ultimately, the ALJ concluded that plaintiff failed to prove a causal relationship between the August 24, 2001 incident and her then-current condition.  *Id*., Ex. 1 at 7.  Even if she had proven a causal relationship, the ALJ explained, plaintiff failed to prove that her condition was permanent and

total. *Id.*, Ex. 1 at 7-8.  In addition to plaintiff's hearing testimony about her headaches, memory loss, pain in her extremities and inability to sit for extended periods, she "testified that she is currently and has been a professional poker player since 1991." *Id.*, Ex. 1 at 8.  The ALJ noted that, in spite of plaintiff's alleged ailments, she continued to play poker professionally and even "had earnings of $57,733 from playing professional poker." *Id.*, Ex. 1 at 9.  Plaintiff did not prove that her then-current "injury and disability, if any, [was] medically causally related to the work injury on August 24, 2001." *Id.*, Ex. 1 at 9.

Plaintiff sought review of the ALJ's August 6, 2010 Compensation Order.  *See* Compl. at 3.  According to plaintiff, on September 20, 2010, Galiher "obtained two . . . different Bluff Magazine's internet impeachment documents (EE 11)," one from Employer's counsel and the other from the Compensation Review Board clerk.  Compl. at 3.  Galiher sent Employer's counsel a fax, *see* Pl.'s Opp'n, Ex. 3 (facsimile to Curtis Hane from Richard Galiher dated September 20, 2010), pointing out that EE 11 differed from the document included in the administrative record, *id.*; *see* Compl. at 3.  Nevertheless, when Galiher filed "Plaintiff's Reply to . . . Employer's Opposition to Claimant's . . . Application for Review," he failed to highlight the discrepancy.  Compl. at 2.  Nor did Galiher "investigate the two . . . different Bluff Magazine's internet impeachment documents," nor did he request a ruling on "Claimant's Motion to File Post-Hearing Rebuttal Exhibits and Reconsideration of the ALJ's Evidentiary Ruling Which Precluded Testimony Concerning Other Income." *Id*. at 4.  The Compensation Review Board affirmed the ALJ's August 6, 2010 Compensation Order, *see* Pl.'s Opp'n, Ex. 10 (Decision and Order of the Compensation Review Board dated January 14, 2011), leaving plaintiff without an opportunity to present her own evidence as to poker winnings and tax information that Galiher submitted on October 9, 2010, Compl. at 4.

Undaunted, plaintiff filed a "Motion to Set Aside the CRB's [D]ecision and Order of January 14, 2011." *Id*. at 5.  Apparently this attempt was unsuccessful, and in 2012 plaintiff filed a civil action in the Superior Court of the District of Columbia following what she believed was Galiher's advice. *Id*.  Only later did plaintiff discover that the Superior Court "was [the] wrong venue," and the court "dismiss[ed the] complaint for [a] second time . . . and granted . . . opposing [counsel's] attorney's fee[s] in the amount of $9,572.10." *Id*.

Plaintiff's legal malpractice claim arises from defendants' alleged failure to "object to the Bluff Magazine's internet impeachment document," which not only was "fraudulent" but also was "not material evidence [of a connection or lack of a connection] between [her] work injuries to the head, back, neck, legs and wrist and her employment with Verizon [or injuries] sustained in [a] slip and fall accident on August 24, 2001." *Id*. ¶ 8.  Further, she claims that defendants failed to determine that EE 11 introduced at the October 1, 2009 hearing was fraudulent, *id*. ¶ 11, to compare and investigate the different exhibits, *id*. ¶¶ 9, 12, and to inform the administrative body that Employer's counsel made improper arguments of [her] past poker tournament winnings for years of 2000 through 2002 . . . ." *Id*.  And, plaintiff alleges, Galiher "did not serve [plaintiff] with skill and care commensurate [to] that generally afforded to clients by other lawyers in similar matters," *id*. ¶ 26, and otherwise engaged in "intentional, reckless, and extreme conduct where he put his own interests" and those of the Employer and DOES "ahead of his client to avoid a legal scandal . . . ," *id*. ¶ 29.  Similarly, plaintiff's breach of fiduciary duty claim arises from defendants' failure "to properly counsel and advise [plaintiff] of fraud in order to litigate the matter, by placing his interest in charging unconscionable fees" above plaintiff's interests.  *Id*. ¶ 32.  Further, she alleges, Galiher failed "to manage the litigation in a prudent manner," so as to "compromise[]" plaintiff's position and to render her "unable to pursue many

6

of her personal goals and responsibilities for the last four . . . years by representing herself Pro Se against . . . her former employer[] . . . and [its] attorney . . . ." *Id*. ¶ 33. Plaintiff claims to have "sustained damages including but not limited to[] lost . . . past and future monetary and medical benefits, los[s] of personal property, . . . legal expenses, . . . emotional distress, anxiety, los[s] of sleep[] and appetite, embarrassment, shame, anger, worry, fear, humiliation, inconvenience, grief and loss of reputation." *Id*. ¶ 34. She demands a judgment against Defendants for five hundred thousand dollars and five hundred thousand dollars in punitive damages for each of the two claims for a total of two million dollars. Compl. at 14.

## II. DISCUSSION

### *A. Dismissal Under Rule 12(b)(6)*

A plaintiff need only provide a "short and plain statement of [her] claim showing that [she is] entitled to relief," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). "A motion to dismiss under Rule 12(b)(6) tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim." *Woodruff v. DiMario*, 197 F.R.D. 191, 193 (D.D.C. 2000). In considering such a motion, the "complaint is construed liberally in the plaintiff['s] favor, and [the Court] grant[s] plaintiff[] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, "the [C]ourt need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Id*. Nor must the Court accept "a legal conclusion couched as a factual allegation," nor "naked

7

assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

A complaint survives a motion under Rule 12(b)(6) only if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly,* 550 U.S. at 556). "[A] complaint [alleging] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 557). Although a *pro se* complaint is "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson,* 551 U.S. at 94 (internal quotation marks and citation omitted), it too "must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct,'" *Atherton v. District of Columbia Office of the Mayor*, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678-79), by the defendants.

### B. The Complaint Fails to State a Legal Malpractice Claim[1]

Defendants move to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted. *See generally* Defs.' Mem. at 7-11. According to defendants, plaintiff does not "state[] a claim for legal malpractice under this jurisdiction's case law" because "[s]he has not pled the required legal malpractice element of 'but for' causation." *Id*. at 8. Further, they argue, "[e]ven if [she] had properly pled the required causation element, she would

---

[1] For purposes of this Memorandum Opinion, the Court presumes without deciding that plaintiff filed her complaint timely. Defendants' motion to dismiss on the ground that the claims are barred by the three-year statute of limitations, *see generally* Defs.' Mem. at 5-7, is denied without prejudice.

be unable to establish as a matter of law that the alleged acts and omissions caused her inability to prevail on the underlying workers' compensation matter." *Id*. at 9.

"To demonstrate that an attorney has been negligent, a party must prove: (1) that there is an attorney-client relationship; (2) that the attorney neglected a reasonable duty; and (3) that the attorney's negligence resulted in and was the proximate cause of a loss to the client." *Herbin v. Hoeffel*, 806 A.2d 186, 194 (D.C. 2002); *Smith v. Haden*, 872 F. Supp. 1040, 1044 (D.D.C. 1994) ("In a legal malpractice case in the District of Columbia the plaintiff bears the burden of presenting evidence establishing that the parties entered into an attorney-client relationship, what the applicable standard of care is, that the standard of care has been violated by the defendant-lawyer, and that there was a causal relationship, or proximate cause, between the violation and the harm complained of . . . ."). In this case, the complaint adequately alleges the existence of an attorney-client relationship. Missing from the complaint, however, are any factual allegations with respect to the applicable standard of care or that the breach of a reasonable duty owed to plaintiff proximately caused or resulted in plaintiff's losses.

Defendants argue that plaintiff "essentially jumps from the alleged breaches to the alleged damages, without alleging how the breach[es] caused the damages," and thus fails to establish a nexus between the two. Defs.' Mem. at 8. At most, plaintiff alleges that defendants' actions or omissions left her unable to present evidence either to the ALJ at an evidentiary hearing or to the Compensation Review Board, *see id*., and suggests that this missed opportunity prevented her from "prevail[ing] in her workers' compensation case." Compl. ¶ 23. She does not state that the absence of evidence caused her to lose at the administrative level. Nor does plaintiff identify the evidence she would have presented, nor explains how this evidence would have been relevant to or would have led to her success.

Moreover, plaintiff fails to demonstrate that defendants' alleged failure to point out discrepancies between the exhibits was relevant to or dispositive of the workers' compensation matter.  Plaintiff does not deny having earned poker tournament winnings since the August 24, 2001 work injury.  Even if EE 11 did not reflect any poker winnings for 2000 through 2002, the document did reflect that plaintiff won poker tournaments occurring in years during which plaintiff claimed to have been permanently disabled.  The fact that the exhibit was purportedly incomplete, in that it omitted <u>additional</u> earnings, was not material to the purpose for which it was used.  A more complete record of plaintiff's earnings during a period of time for which she claimed to be permanently disabled would not have helped her case.

An "attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action nor meritorious defense as the case may be; or . . . if conduct of an attorney with respect to litigation results in no damage to [the] client." *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949).  Here, plaintiff does not allege "a legally cognizable injury," *Chase v. Gilbert*, 499 A.2d 1203, 1212 (D.D.C. 1985), such as the loss of a cause of action or the loss of an opportunity to recover damages, *see Smith v. Haden*, 868 F. Supp. 1, 2 (D.D.C. 1994), or that there would have been a different outcome but for defendants' negligence, *see Chase*, 499 A.2d at 1212 (citation omitted).

## II. CONCLUSION

The Court concludes that plaintiff's complaint fails to state a legal malpractice claim upon which relief can be granted.  Defendants' motion to dismiss will be granted.  An Order is issued separately.

DATE:  September 1, 2015                          /s/
                                                   RUDOLPH CONTRERAS
                                                   United States District Judge